IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-03103-WJM-MEH

GEOFFRY DAVID FEY,

    Plaintiff,

v.

MONIQUE D. B'NAI WASHINGTON,
RICH ORMAN,
GEORGE BRAUCHLER, and
18TH JUDICIAL DISTRICT, COLORADO

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Defendants' Motion to Dismiss [filed February 14, 2017; ECF No. 20]. The Motion is fully briefed, and the Court finds oral argument will not assist in its adjudication. Defendants' Motion argues that the Court should dismiss this case, because Defendants are entitled to either sovereign, absolute, or qualified immunity.[1] For the reasons that follow, the Court agrees

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kan. Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

with Defendants. Accordingly, the Court respectfully recommends that the District Court grant Defendants' Motion to Dismiss.

## BACKGROUND

Plaintiff initiated this lawsuit on December 16, 2016. *See* Compl., ECF No 1. Plaintiff's claims arise from Plaintiff's interactions with the District Attorney's ("D.A.") Office for the Eighteenth Judicial District and an affidavit Defendant Monique B'Nai Washington filed in a prior civil case. *See* Am. Compl. ¶ 1, ECF No. 10. On February 14, 2017, Defendants responded to Plaintiff's Amended Complaint by filing the present Motion. *See* Defs.' Mot. to Dismiss, ECF No. 20.

**I.    Facts**

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiff in his Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(1) pursuant to *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) and under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

From 2013 through 2015, Plaintiff was a criminal defendant in five separate misdemeanor cases. Am. Compl. ¶ 1. Each of these cases was prosecuted by Washington—a Deputy D.A. for the Eighteenth Judicial District. *Id.* In January 2015, while some of the criminal cases were still pending, Plaintiff's ex-wife filed a civil complaint against Plaintiff alleging defamation.[2] *Id.* at ¶¶ 5, 12; *Runyan v. Fey*, No. 15-cv-00009-RBJ-CBS. In support of the ex-wife's motion for summary

---

[2] On May 3, 2016, the parties reached a settlement agreement as to all claims in this case. *Runyan*, No. 15-cv-00009-RBJ-CBS, ECF No. 132.

judgment on Plaintiff's counterclaims, Washington authored an affidavit, which summarized the prior criminal cases she prosecuted against Plaintiff. Am. Compl. ¶ 5; *Runyan*, No. 15-cv-00009-RBJ-CBS, ECF No. 61-10. By May 2015, all five criminal cases had been dismissed with prejudice. Am. Compl. ¶ 2. Additionally, the case for which Washington authored the affidavit settled in April 2016. *See id.* at ¶12.

On December 5, 2015, Plaintiff emailed Defendant George Brauchler—the D.A. for the Eighteenth Judicial District of Colorado—to discuss his concerns about the veracity of the affidavit.[3] *Id.* at ¶ 7. After no one at the D.A.'s Office took any action in response, Plaintiff sent another email to Brauchler requesting review of the circumstances between Plaintiff and Washington. *Id.* at ¶ 8. Seven hours later, Brauchler and Washington caused Defendant Rich Orman—the Senior Deputy D.A.—to give written notice to Plaintiff that he could no longer contact any member of the D.A.'s Office except by United States Mail or email directed to Orman. *Id.* at ¶ 9; Ex. D. to Defs.' Mot. to Dismiss, ECF No. 20-4. The notice did not include an expiration date or a method for Plaintiff to seek review. Am. Compl. ¶ 9. As of the date of the filing of the Amended Complaint, the D.A's Office has not lifted the restriction. *Id.* at ¶ 14.

## II. Procedural History

Based on these factual allegations, Plaintiff filed his Amended Complaint on January 31, 2017. ECF No. 10. Plaintiff brings six claims for relief. Plaintiff's first cause of action alleges Defendants violated Plaintiff's due process rights by obstructing his access to Brauchler, his elected official. Am. Compl. 6. Plaintiff's second claim asserts Defendants conspired with one another to

---

[3] Although the Amended Complaint states this email occurred on December 5, 2016, the context of the allegation demonstrates that the email actually occurred in 2015. *See* Am. Compl. ¶ 8 (stating that Plaintiff sent a follow-up email to the December 5 email on December 7, 2015).

deprive Plaintiff of his constitutional rights. *Id.* at 7. The third claim seeks a declaration that the affidavit Washington filed was illegal and false. *Id.* at 7–8. Plaintiff's fourth cause of action appears to assert a religious discrimination claim against Washington. *Id.* at 8. According to Plaintiff, Washington observed Plaintiff with his rabbi, who is always dressed in orthodox Jewish clothing, and "singled out" Plaintiff based on his religion. *Id.* at 2, 8. Plaintiff's fifth cause of action asserts a defamation claim for the statements Washington made in her affidavit. *Id.* at 9. Lastly, Plaintiff asserts a claim for extreme and outrageous conduct. *Id.* at 9–10.

Defendants responded to Plaintiff's Amended Complaint by filing the present Motion to Dismiss. ECF No. 20. As to Plaintiff's claims against the Eighteenth Judicial District of Colorado, Defendants assert entitlement to sovereign immunity. *Id.* at 3–4. Additionally, Defendants argue Plaintiff's claims against Washington are barred by absolute immunity. *Id.* at 4. Defendants also assert Brauchler is not a proper Defendant, because he did not personally participate in any of the alleged unconstitutional activity. *Id.* at 5. As to Plaintiff's remaining federal claims, the individually named Defendants claim they are entitled to qualified immunity, because the communication restriction imposed on Plaintiff does not violate Plaintiff's constitutional rights. *Id.* at 6–8. Finally, Defendants argue Plaintiff's state claims are barred by the Colorado Governmental Immunity Act ("CGIA"). *Id.* at 8–9.

On March 13, 2017, Plaintiff filed a Response to Defendants' Motion. ECF No. 28. Plaintiff argues the alleged conduct was not part of Washington's "prosecutorial discretion or routine." *Id.* at 3–4. The remainder of Plaintiff's Response does not address Defendants' immunity, but instead reasserts the allegedly unconstitutional conduct underlying Plaintiff's claims. *Id.* at 4–8.

4

Defendants filed a Reply on March 27, 2017.[4] ECF No. 33. Because Defendants' Motion raises issues of sovereign, absolute, and qualified immunity, the Court stayed this case pending a determination on the present Motion. ECF No. 26.

## LEGAL STANDARDS

### I. Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Id.* (citing *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013)). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Pueblo of Jemez*, 790 F.3d at 1151. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.

### II. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

---

[4] On March 23, 2017, Plaintiff filed a "Notice for the Record," which asserts that Exhibit B to Defendants' Motion to Dismiss is unreliable. ECF No. 32. Because Exhibit B is not material to the Court's holding, the Court need not analyze the appropriateness of Plaintiff's Notice.

5

as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

### III. Dismissal of a Pro Se Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's pleadings "liberally" and hold the pleadings "to a less stringent standard than formal pleadings filed by lawyers." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). "[The] court, however, will not supply additional factual

6

allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Id.* (citing *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997)). The Tenth Circuit interpreted this rule to mean:

> [I]f the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.

*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) ("[W]e will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded.").

## ANALYSIS

Defendants' Motion to Dismiss requires the Court to determine whether Defendants are immune from suit. For the reasons that follow, the Court recommends holding that each of Plaintiff's claims are barred by sovereign, absolute, or qualified immunity.

**I.      Sovereign Immunity for Claims Against the Eighteenth Judicial District of Colorado**

To the extent Plaintiff asserts claims against the Eighteenth Judicial District of Colorado for damages, Defendants argue Plaintiff's claims are barred by sovereign immunity. The Court agrees.

The Eleventh Amendment to the United States Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Courts have interpreted this Amendment as barring a citizen from suing a state in federal court without its consent. *See Edelman v. Jordan*, 415 U.S.

7

651, 662–63 (1974); *Levy v. Kan. Dep't of Social & Rehab. Servs.*, 789 F.3d 1164, 1168 (10th Cir. 2015). "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), *superseded by statute on other grounds*, 28 U.S.C. § 1367.

A government entity's entitlement to sovereign immunity generally turns on whether the entity is an arm of the state or a political subdivision; arms of the state generally receive immunity, while political subdivisions, such as cities, do not. *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007); *Van De Weghe v. Chambers*, 569 F. Appx. 617, 620–21 (10th Cir. 2014). In determining whether an entity is an arm of the state, courts consider four factors: (1) how state law classifies the entity, (2) the autonomy accorded the entity under state law, (3) the amount of state funding the entity receives, and (4) whether the entity is concerned primarily with local or state affairs. *Steadfast Ins. Co.*, 507 F.3d at 1253. Federal courts "give deference to state court decisions regarding whether a given entity is an arm of the state, but [they] do not view these rulings as dispositive." *Id.*

Here, the Court recommends holding that these factors favor a finding that a state judicial district is an arm of the state.[5] Regarding the first factor, Colorado courts have not analyzed whether

---

[5] Defendants argue settled Tenth Circuit law provides that the D.A.'s Office is an arm of the state protected by the Eleventh Amendment. Defs.' Mot. 3–4 (citing *Rozek v. Topolnicki*, 865 F.2d 1154, 1158 (10th Cir. 1989) ("The district court did not err in concluding that the Office of the District Attorney . . . [is] entitled to Eleventh Amendment immunity in this case."); *Van De Weghe*, 569 F. Appx. at 621 (holding that the D.A.'s Office for Colorado's Eighteenth Judicial District "share[s] in the state's sovereign immunity")). Although Defendants are correct, Plaintiff named the Eighteenth Judicial District as a Defendant, not the D.A.'s Office. The Tenth Circuit has not specifically determined whether judicial districts are entitled to sovereign immunity. However, the Court finds that the cases granting sovereign immunity to the D.A.'s Office provide support for granting immunity to judicial districts. The D.A's Office operates within a judicial district, and its employees act as officers of the judicial district. *See Davidson v. Sandstrom*, 83 P.3d 648, 661

8

judicial districts are arms of the state for sovereign immunity purposes. Although the Colorado Supreme Court held in *Davidson v. Sandstrom* that judicial districts are political subdivisions, the court was not addressing sovereign immunity. 83 P.3d 648, 656 (Colo. 2004). Instead, the court was interpreting the language of a statutory section that delineates term limits for elected officers. *Id.* at 656–57. The Court relied heavily on the statute's legislative history, which indicated the General Assembly intended "political subdivision" to have a broad construction. *Id.* at 656. The court did not analyze the four factors that are relevant to the immunity issue. Moreover, even if this case did directly determine whether judicial districts are political subdivisions for Eleventh Amendment purposes, this holding would be only one non-dispositive factor in the Court's determination. *Steadfast Ins. Co.*, 507 F.3d at 1253 ("We give deference to state court decisions regarding whether a given entity is an arm of the state, but we do not view these rulings as dispositive.").

Additionally, Justice Hobbs' concurring opinion in *Davidson*, which explains the nature of judicial districts in detail, demonstrates that the remaining three factors weigh in favor of treating judicial districts as arms of the state. Regarding the second factor—the level of autonomy accorded the entity under state law—Justice Hobbs notes that "judicial districts have no local governing body" and they exist "to deliver the services of the third branch of government . . . to the citizens of Colorado." *Davidson*, 83 P.3d at 662 (Hobbs, J., concurring). Moreover, the Colorado Constitution specifically gives the General Assembly control over the number of judicial districts and their boundaries. COLO. CONST. art. 6, § 10 ("[T]he general assembly may by law . . . change the

---

(Colo. 2004)(Hobbs, J., concurring). Because an entity that is part of a judicial district is an arm of the state, it follows that judicial districts are also state agencies.

9

boundaries of any district or increase or diminish the number of judicial districts."). As the State's district courts, judicial districts also lack autonomy from the Colorado Supreme Court. *See* COLO. CONST. art. 6, § 2; *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 240 (3d Cir. 2005) (holding that judicial districts are entitled to sovereign immunity, in part because they lack autonomy from the Pennsylvania Supreme Court). Therefore, the Court finds that the second factor favors treating judicial districts as arms of the state.

As for the amount of state funding the entity receives, Justice Hobbs observed that "judicial district funds that pay salaries are predominately state funds appropriated by the General Assembly; and," unlike a city or county, "judicial districts may not incur debt." *Davidson*, 83 P.3d at 662 (Hobbs, J., concurring). Moreover, "both judges and district attorneys are provided salaries, retirement, and insurance by the state." *Id.* Therefore, the Court also finds that the third factor favors granting sovereign immunity to judicial districts.

Regarding the fourth factor—whether the entity is primarily concerned with local or state affairs—the Court finds this does not weigh heavily in favor of either side. Although judicial districts primarily deal with legal matters arising within a specific geographical area, judicial districts also play a part in creating the law of the State and delivering the services of the judicial branch of government to Colorado citizens. *See id.* Therefore, two of the four factors strongly favor treating judicial districts as arms of the state judicial branch. Because the remaining two factors do not favor a contrary holding, the Court finds that judicial districts are entitled to Eleventh Amendment sovereign immunity.[6] Accordingly, the Court recommends dismissing Plaintiff's claims

---

[6] Other circuits that have analyzed the issue have generally concluded that judicial districts in other states are entitled to sovereign immunity. *Benn*, 426 F.3d at 241 ("We agree with the District Court that the Judicial District has Eleventh Amendment immunity which functions as an

against the Eighteenth Judicial District.[7]

## II. Absolute Immunity for Claims Against Defendant Washington

Although Plaintiff does not designate against which Defendant he brings each of his causes of action, it appears that Plaintiff includes Washington in all six of his claims for relief. Defendants argue that Washington is absolutely immune from suit, because all claim relate to her participation as a witness in a judicial proceeding. Defs.' Mot. 4. The Court agrees with Defendants in part. Plaintiff's claims against Washington relate to either Washington's submission of an affidavit in a civil case (claims three through six) or Washington's participation in denying Plaintiff access to Brauchler and the D.A.'s Office (claims one and two).[8] The Court recommends holding that Washington is entitled to absolute immunity for claims based on her affidavit, but not for her participation in allegedly denying Plaintiff access to the D.A.'s Office.

Absolute immunity provides protection from suit for some public officials on the basis that "harassment by unfounded litigation would cause a deflection of the [official's] energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler v. Pachtman*, 424 U.S. 409, 423

---

absolute bar to [the plaintiff's] ADA claim."); *Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 762 (6th Cir. 2010) (holding that "Michigan's district courts, including the Nineteenth District Court, are arms of the state for sovereign-immunity purposes.").

[7] The Court notes that even if the Eighteenth Judicial District were not entitled to sovereign immunity, the claims against the Judicial District would still be subject to dismissal. As fully explained in Section III, Plaintiff fails to allege a constitutional violation.

[8] In their Motion, Defendants assert that Washington is also absolutely immune for any conduct related to her participation in Plaintiff's criminal prosecutions. Defs.' Mot. 4. Although Plaintiff alleges in the "factual background" section of his Amended Complaint that Washington was maliciously prosecuting him, Am. Comp. ¶ 1, none of Plaintiff's claims for relief are based on actions Washington took during the criminal prosecutions. *See id.* at 6–10.

11

(1976). The United States Supreme Court has specifically accorded absolute immunity to judges, grand jurors, and prosecutors acting within the scope of their official duties. *Id.* at 422–23. Additionally, witnesses enjoy immunity for any claims arising out of their prior testimony. *Briscoe v. LaHue*, 460 U.S. 325, 345–46 (1983).

First, the Court holds that Washington is not absolutely immune from Plaintiff's claims arising out of Washington's participation in denying Plaintiff access to the D.A.'s Office.[9] Indeed, causing Orman to notify Plaintiff that he many not call any individual at the D.A.'s Office is not "within the scope of [Washington's] duties in initiating and pursuing a criminal prosecution and presenting the State's case." *Imbler*, 424 U.S. at 409. Therefore, the Court holds that Washington is not entitled to absolute immunity for Plaintiff's first and second claims.

However, the Court finds that Washington is entitled to absolute immunity as a witness from Plaintiff's causes of action related to the affidavit Washington submitted.[10] Regarding Plaintiff's federal causes of action (claims three and four), "all witnesses enjoy absolute immunity from civil liability under § 1983 for their testimony in a prior trial." *Hunt v. Bennett*, 17 F.3d 1263, 1268 (10th Cir.1994); *Spielman v. Hildebrand*, 873 F.2d 1377, 1382 (10th Cir. 1989) (holding that a witness was absolutely immune from a civil action based on false testimony she allegedly gave at an adversary hearing); *Briscoe*, 460 U.S. at 335 ("The ability of courts, under carefully developed

---

[9] The Court notes that Plaintiff's allegations regarding Washington's participation are fairly conclusory. *See* Am. Compl. ¶ 9. However, because the Court liberally construes a pro se plaintiff's complaint and because the issue is ultimately inconsequential to the Court's resolution of this Motion, the Court will accept Plaintiff's allegations.

[10] The Court notes that because Washington was not acting within the scope of her duties as a prosecutor when she completed the affidavit, prosecutorial immunity does not apply to the affidavit she submitted. However, witnesses are separately immune from civil liability for all testimony they give in prior judicial proceedings. *See, e.g.*, *Briscoe*, 460 U.S. at 335.

procedures, to separate truth from falsity, and the importance of accurately resolving factual disputes in criminal (and civil) cases are such that those involved in judicial proceedings should be given every encouragement to make a full disclosure of all pertinent information within their knowledge." (quoting *Imbler*, 424 U.S. at 439)). Moreover, the rationales for providing immunity to witnesses giving in-person testimony apply equally to those submitting sworn affidavits. *Sykes v. James*, 13 F.3d 515, 521 (2d Cir. 1993) (stating that affidavits contain most of the procedural safeguards as in-person testimony, and holding that an affiant was entitled to absolute immunity); *Burns v. County of King*, 883 F.2d 819, 821–23 (9th Cir. 1989) (holding that a social worker who provided an affidavit to the court in a bond revocation proceeding was absolutely immune from subsequent suit). Indeed, when an individual submits an affidavit in support of a motion for summary judgment, as was the case here, the proceeding is adversarial in nature and the affiant is subject to the penalty of perjury if the affidavit is false. *See Sykes*, 13 F.3d at 521. Therefore, the Court recommends finding that Washington is absolutely immune from Plaintiff's third and fourth claims for relief.

Plaintiff's fifth and six causes of action, which are also based on Washington's allegedly false affidavit, assert claims for defamation and outrageous conduct. Am. Compl. 8–10. Because these are state claims, the Court must address whether Washington is absolutely immune under Colorado common law. *Aspen Orthopaedics & Sports Med., LLC v. Aspen Valley Hosp. Dist.*, 353 F.3d 832, 837 (10th Cir. 2003) ("[S]tate law governs the applicability of immunity to state law claims . . . ." (quoting *Sheth v. Webster*, 145 F.3d 1231, 1236 (11th Cir. 1998))); *Gray-Hopkins v. Prince George's Cty., Md.*, 309 F.3d 224, 231 (4th Cir. 2002) (stating that, in analyzing state claims, the court "must look to substantive state law . . . in determining the nature and scope of a claimed immunity"). Under Colorado law, "the general rule is that communications made in the course of

judicial proceedings . . . are absolutely privileged if they bear a reasonable relationship to the subject of the inquiry." *MacLarty v. Whiteford*, 496 P.2d 1071, 1072 (Colo. App. 1972) (holding that statements in a letter to the state liquor licensing authority were absolutely privileged under Colorado common law). Accordingly, witnesses in judicial proceedings are entitled to absolute immunity. *Wagner v. Bd. of Cty. Comm'rs*, 933 P.2d 1311, 1314 (Colo. 1997).

Based on this precedent, the Court recommends holding that Washington is absolutely immune from Plaintiff's fifth and sixth causes of action. Plaintiff's defamation claim alleges "Defendant Washington's affidavit clearly libels Mr. Fey." Am. Compl. 9. Additionally, Plaintiff's claim for outrageous conduct asserts "Defendant[] Washington's false affidavit was also knowingly intended to mislead a U.S. District Court." *Id.* at 10. Because both of these causes of action arise from Washington's completion of an affidavit in a judicial proceeding, Washington is absolutely immune from liability.

In sum, the Court holds that Washington is entitled to absolute immunity over Plaintiff's third through sixth causes of action.[11] However, because the conduct Plaintiff alleges in his first and second causes of action does not relate to Washington's prosecutorial duties or her role as a witness in judicial proceedings, Washington is not entitled to absolute immunity over those claims.

## III. Qualified Immunity

Defendants argue that Orman, Brauchler, and Washington (to the extent absolute immunity does not apply) are entitled to qualified immunity. Defs.' Mot. 5–8. Qualified immunity protects a public official whose violation of a plaintiff's civil rights was not clearly established at the time

---

[11] The Court notes that even if Washington were not entitled to absolute immunity, the claims against her would still be subject to dismissal. For the reasons set for in Section III, Washington would be entitled to qualified immunity.

14

of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006). "A qualified immunity defense is only available to parties sued in their individual capacity." *Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005). "When faced with a qualified immunity defense, the plaintiff must establish '(1) that the defendant's actions violated a federal constitutional or statutory right; and (2) that the right violated was clearly established at the time of the defendant's actions.'" *Beedle*, 422 F.3d at 1069 (quoting *Greene v. Barrett*, 174 F.3d 1136, 1142 (10th Cir. 1999)); *Wilson v. Layne*, 526 U.S. 603, 603 (1999); *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005).

Because Plaintiff fails to assert that Defendants' actions violated his constitutional rights, the Court recommends holding that the individual defendants are entitled to qualified immunity over each of Plaintiff's federal claims.[12]

A. First and Third Claims for Relief

Plaintiff's first claim for relief alleges that Defendants violated Plaintiff's due process rights by placing an obstruction between him and Brauchler, the D.A. for his district. Am. Compl. 6–7. Specifically, Plaintiff contends Defendants prevented him from calling anyone at the D.A.'s Office and emailing anyone other than Orman. *Id.* at ¶ 9. Plaintiff's third cause of action seeks a declaratory judgment stating that Washington's affidavit was unlawful. Because both of Plaintiff's

---

[12] Because the Court holds that Plaintiff fails to state a constitutional violation, Plaintiff's conspiracy claim also fails. *See Dixon v. City of Lawton, Okla.*, 898 F.2d 1443, 1449 (10th Cir. 1990) (stating that a Section 1983 conspiracy claim requires an underlying constitutional deprivation). Additionally, because the Court holds that Defendants are entitled to qualified immunity, the Court need not address Defendants' alternative argument that Plaintiff's claims against Brauchler fail for lack of personal participation. *See* Defs.' Mot. 5.

claims arise from an alleged restraint on his communications with public officials, the Court construes Plaintiff's claims as being for violation of his First Amendment rights.[13] *See Ferrone v. Onorato*, 439 F. Supp. 2d 442, 447 (W.D. Pa. 2006) (analyzing a restriction on email communications with public officials under the First Amendment); *Van Deelen v. Ramirez*, No. 00-4067-SAC, 2001 WL 789275, at *5 (D. Kan. May 1, 2001) (holding that a restriction requiring the plaintiff to communicate with public officials only in writing did not violate the First Amendment).

Defendants argue Plaintiff fails to state a constitutional violation, because Plaintiff is still able to freely "communicate with District Attorney Brauchler and the Office of the District Attorney by emails to Mr. Orman and correspondence sent through the United States Mail." Defs.' Mot. 6. The Court agrees with Defendants that the alleged restriction, which only regulates the manner of Plaintiff's speech, does not violate Plaintiff's constitutional rights.

"[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981). The government may impose reasonable time, place, or manner restrictions without violating the First Amendment. *Consol. Edison Co. of N.Y., Inc. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 536 (1980) ("A restriction that regulates only the time, place, or manner of speech may be imposed so long as it is reasonable.").

Here, because the alleged constraint restricts only the method by which Plaintiff can communicate with his public officials, and not the content of his speech, the restriction is constitutional so long as it is reasonable. According to the notice of restriction sent by Orman, the

---

[13] To the extent Plaintiff seeks to claim a deprivation of a liberty interest, the Court finds no support for the proposition that an individual has a liberty interest in unfettered communication with elected officials.

D.A.'s Office instituted the restriction, because Plaintiff's prior communications were threatening and harassing.[14] Exhibit D to Defs.' Mot. to Dismiss, ECF No. 20-4. The restriction does not impose a complete bar on Plaintiff's communications. Instead, it forbids Plaintiff from calling the D.A.'s Office and emailing anyone other than Orman. Am. Compl. ¶ 9. Because Plaintiff remains able to contact the office using a variety of other methods, such as United States Mail or email to Orman, the Court finds that the restriction is narrowly tailored to address the specific problem the D.A.'s Office perceived—directly threatening communications from Plaintiff. Therefore, the Court recommends finding that Defendants are entitled to qualified immunity over Plaintiff's first and third claims for relief. *See Van Deelen*, 2001 WL 789275, at \*5 (rejecting a First Amendment challenge to a restriction that forbade the plaintiff from communicating with a state actor by any method other than written correspondence).

    C.    Fourth Claim for Relief

Plaintiff's fourth cause of action appears to allege a claim for religious discrimination. Am. Compl. 8 ("Mr. Fey was singled out by the Defendant(s) based on his religion and/or religious practices."). Plaintiff further alleges that he is Jewish and Washington regularly saw him with his rabbi, who is "always dressed in orthodox clothing." *Id.* at ¶ 3. It is not clear to the Court under what authority Plaintiff brings his claim. In any event, the Court recommends finding that Plaintiff fails to state a claim.

---

[14] The Court may properly consider this email at the motion-to-dismiss stage, because Plaintiff references it in his Amended Complaint and it is central to his first and third claims for relief. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.").

To the extent Plaintiff seeks to assert an equal protection claim on a "class of one" theory, Plaintiff would have to allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."[15] *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216–17 (10th Cir. 2011). Although Plaintiff alleges he was "singled out" based on his religion, he provides no factual allegations to support this. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that mere conclusory statements do not suffice to state a cause of action). Moreover, the mere assertion that Defendants knew of Plaintiff's religion is insufficient to allege that Defendants intentionally treated Plaintiff differently because of his religion. *See generally Kan. Penn Gaming, LLC*, 656 F.3d at 1217 (recognizing the "substantial burden" that plaintiffs must satisfy in a "class of one" equal protection case); *McCleskey v. Kemp*, 481 U.S. 279, 298 (1987) (stating that discriminatory intent "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,'" the individual's religion). Therefore, the Court recommends holding that Plaintiff's fourth cause of action fails to state a claim.

**IV.    State Claims**

Plaintiff's final two causes of action assert claims under Colorado state law for defamation and outrageous conduct. Am. Compl. 8–10. Defendants argue Plaintiff's claims are barred because of Plaintiff's failure to file a notice of claim under the CGIA. Defs. Mot. 8. The Court agrees, and

---

[15] The Court recognizes that, following the Supreme Court's opinion in *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008), some circuits held that a "class of one" equal protection claim is inapplicable in the prosecutorial-discretion context. *See United States v. Moore*, 543 F.3d 891, 898–99 (7th Cir. 2008). However, the Tenth Circuit has specifically declined to adopt this broad of an interpretation of *Engquist*. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1217 n.1 (10th Cir. 2011).

recommends holding that the CGIA bars Plaintiff's claims.

Before asserting a state claim against a Colorado government entity or an employee of that entity, the plaintiff must "file a written notice . . . within one hundred eighty days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or a cause of action for such injury." Colo. Rev. Stat. § 24-10-109(1). This requirement applies whether or not the plaintiff asserts a willful or wanton act. *Id.* Colorado courts strictly construe Section 24-10-109(1) and consider it a jurisdictional prerequisite to suit. *Gallagher v. Bd. of Trs. for Univ. of N. Colo.*, 54 P.3d 386, 391 (Colo. 2002), *overruled on other grounds by Martinez v. Estate of Bleck*, 379 P.3d 315, 322 (Colo. 2016); *City & County. of Denver v. Crandall*, 161 P.3d 627, 634 (Colo. 2007). Additionally, "a claimant must allege in his or her complaint that the claimant has complied with the jurisdictional prerequisite of filing a notice of claim." *Kratzer v. Colo. Intergovernmental Risk Share Agency*, 18 P.3d 766, 769 (Colo. App. 2000); *Johnson v. W. State Colo. Univ.*, 71 F. Supp. 3d 1217, 1231–32 (D. Colo. 2014).

Here, Defendants are covered by the CGIA as a government entity or employees of that entity acting within the scope of their employment. *See* Colo. Rev. Stat. §§ 24-10-103(5), 118(1)(a). Plaintiff does not allege in his Amended Complaint that he filed a notice of claim with the Eighteenth Judicial District or any other government entity. Moreover, the allegedly defamatory and outrageous conduct occurred no later than December 2015. Am. Compl. ¶¶ 5, 9. Therefore, Plaintiff would have had to file a notice of claim by June 2016 to comply with the statute. Because Plaintiff failed to do so, Plaintiff's state claims are jurisdictionally barred. *See Johnson*, 71 F. Supp. 3d at 1232 ("Because it is undisputed that [p]laintiff did not serve a notice of claim on either [d]efendant . . . within 180 days of the date he discovered his injury, the Court lacks subject matter

19

jurisdiction over [p]laintiff's state law claims.").

## **CONCLUSION**

In sum, the Court recommends finding that the Eighteenth Judicial District is entitled to sovereign immunity over Plaintiff's claims. Additionally, Defendant Washington is entitled to absolute immunity over Plaintiff's third through sixth causes of action. Because Plaintiff fails to state a constitutional violation, Defendants Washington, Orman, and Brauchler are entitled to qualified immunity over Plaintiff's first four claims for relief. Finally, Plaintiff's state claims are barred by the CGIA, because Plaintiff failed to comply with the statute's notice requirement. Accordingly, the Court recommends that Defendants' Motion to Dismiss [filed February 14, 2017; ECF No. 20] be **granted**.

Entered and dated at Denver, Colorado, this 12th day of April, 2017.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge